UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| REAL ESTATE SOLUTIONS TODAY LLC., <br><br> Plaintiff, <br><br> v. <br><br> JOHN SCIFO and ADVANCED STRATEGY CONCEPTS, INC., <br> Defendants. | Civil Action No. 20-4512 (FLW) <br><br> **OPINION** |

**WOLFSON, United States Chief District Judge**:

This matter comes before the Court on a motion by defendants John Scifo and Advanced Strategy Concepts, Inc.'s ("Advanced Strategy") (collectively, "Defendants"), pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), to dismiss the action initiated by Plaintiff Real Estate Solutions Today, LLC ("REST"), or, in the alternative, to transfer the case to the United States District Court for the Eastern District of New York. For the following reasons, this Court lacks personal jurisdiction over Defendants and this matter is transferred to the United States District Court for the Eastern District of New York, in lieu of dismissal, pursuant to 28 U.S.C. § 1631.

**I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In June 2018, Robert Napolitano, a New Jersey resident and REST's sole member and manager was introduced to Mr. Scifo by a mutual acquittance for the alleged purpose of "engaging

1

in joint business opportunities involving the purchase and sale of life insurance policies."[1] Compl. ¶16; *see also* ECF No. 10-1, Declaration of Robert Napolitano ("Napolitano Decl."), ¶1.[2] Mr. Scifo is a resident of Pennsylvania, and the sole shareholder of defendant Advanced Strategy. Compl. ¶5; *see also* ECF No. 8, Declaration of John Scio ("Scifo Decl.") ¶2.[3] Thereafter, Mr. Napolitano and Mr. Scifo agreed to participate in a business opportunity, pursuant to which Mr. Napolitano would purchase a one-half interest in a life insurance policy owned by Advanced Strategy. Compl. ¶17.

Some time prior to the meeting between the two individuals, Advanced Strategy obtained an Allstate Life Insurance Company of New York ("Allstate") issued life insurance policy, on the life of a third-party, Martin Purvin, with a face amount of $1,000,000.00. Compl. ¶¶6,14-15. Pursuant to the arrangement between Mr. Scifo and Mr. Napolitano, in or around June 2018, Advanced Strategy and DREAM Capital Management, LLC ("DREAM"), a Delaware limited

---

[1] Confusingly, the Complaint interchangeably refers to both REST and Robert Napolitano, who is not a party to this action, as "Plaintiff." In order to avoid confusion and because Mr. Napolitano is not a plaintiff, this opinion refers to him as "Mr. Napolitano."

[2] On a motion to dismiss for lack of personal jurisdiction, the parties may rely on the complaint, affidavits, or other competent evidence. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009); *see also Levy v. Jaguar Land Rover N. Am., LLC.*, No. 19-13497, 2020 WL 563637, at *3 (D.N.J. Feb. 4, 2020) ("[I]n determining whether personal jurisdiction exists, the Court looks beyond the pleadings to all relevant evidence and construes all disputed facts in favor of the plaintiff.").

[3] Plaintiff's Complaint alleges that Mr. Scifo is a citizen of and resides in Mineola, New York. *See* Compl. ¶¶2,5. However, on this motion, Mr. Scifo explained that although Advanced Strategy has its principal office in Mineola, New York, he is a resident of Tobyhana, Pennsylvania. Scifo Decl. ¶2. Mr. Scifo further represents that Advanced Strategy has no other employees and he worked exclusively in the company's Mineola office through June 30, 2020, but as a result of the COVID-19 pandemic he is now working remotely from his residence. *Id.* Plaintiff does not dispute Mr. Scifo's assertions regarding his citizenship.

liability company, entered into a contract for the sale of one-half of the life insurance policy.[4] Compl. ¶18. Under the terms of the contract, DREAM agreed to pay $60,000 for a one-half interest in the policy, and Advanced Strategy and DREAM agreed that the cost of the policy's $18,000 annual premium would be split equally between them. *Id*. On June 27, 2018, DREAM paid Advanced Strategy $69,000 – its payment for the one-half interest in the policy, plus an advance of DREAM's portion of the annual premium. *Id*. at ¶¶19,23. In July and August 2018, Allstate confirmed, in writing, that both the beneficiary and owner designations on the insurance policy had been updated to include DREAM. *Id*. at ¶¶22-21.

A few months after DREAM purchased one-half of the life insurance policy, on August 17, 2018, Allstate allegedly informed Advanced Strategy that the policy was in a grace period and $5,735.66 would need to be remitted by September 10, 2018, in order to bring the policy current. *Id*. Plaintiff further alleges that, despite the fact that DREAM had pre-paid its portion of the annual policy, Defendants failed to remit the required amounts to Allstate. *Id*. at ¶¶23-24. As a result, on or about September 11, 2018, the life insurance policy lapsed. *Id*. at ¶25. To date, Defendants have allegedly failed to reinstate the policy by paying Advanced Strategy's share of the premium. *Id*. at ¶26.

Then, in early April 2020, DREAM allegedly assigned its interest in the then-lapsed life insurance policy to REST.[5] Shortly thereafter, on April 20, 2020, Plaintiff filed the instant

---

[4] Plaintiff has not identified Mr. Napolitano's connection to DREAM, if any; however, Mr. Napolitano is presumably affiliated with the entity.

[5] In his reply declaration, Mr. Scifo represents that he could not locate the executed copy of the assignment contract in his records, but suggests that it may have been subscribed and notarized in New York. ECF No. 12, Reply Declaration of John Scifo ("Scifo Reply Decl.") ¶7. In any event, the assignment is between Plaintiff and DREAM -- not one of the defendants in this action – and therefore, has little bearing on the existence of personal jurisdiction over Mr. Scifo or Advanced Strategy.

3

complaint alleging, *inter alia,* breach of contract, fraud, misrepresentation, and unjust enrichment. Compl. ¶¶28-55. Defendants move to dismiss this matter for, *inter alia*, lack of personal jurisdiction and improper venue, or alternatively, seek to transfer this matter to the United States District Court for the Eastern District of New York. *See generally* ECF No. 9, Def. Br.

## II. DISCUSSION

### a. Standard of Review

To withstand a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), a plaintiff bears the burden of establishing the court's personal jurisdiction over the moving defendant by a preponderance of the evidence. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009); *see Cerciello v. Canale*, 563 F. App'x 924, 925 n.1 (3d Cir. 2014) (noting that the plaintiff "bears the burden to prove, by a preponderance of the evidence, that personal jurisdiction is proper.") (internal quotation marks and citation omitted). "However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Still, to meet its burden, the plaintiff must establish "jurisdictional facts through sworn affidavits or other competent evidence . . . . [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." *Id*. at 101 (citation and internal quotation marks omitted). If the plaintiff meets this burden, "the burden shifts to the defendant to establish the presence of other considerations that would render the exercise of personal jurisdiction unreasonable." *Display Works, LLC v. Bartley*, 182 F.Supp.3d

166, 172 (D.N.J. 2016); *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1226 (3d Cir. 1992).

"A district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state." *Metcalfe*, 566 F.3d at 330; *see* Fed. R. Civ. P. 4(e). In assessing whether personal jurisdiction exists, the Court's analysis is twofold: "[t]he court must first determine whether the relevant state long-arm statute permits the exercise of jurisdiction; if so, the court must then satisfy itself that the exercise of jurisdiction comports with due process." *Display Works*, 182 F. Supp. at 172. "Since New Jersey's long-arm statute allows 'the exercise of personal jurisdiction to the fullest limits of due process,' [the Court must] 'look to federal law for the interpretation of the limits on in personam jurisdiction.'" *Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 563 (3d Cir. 2017) (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998)).

"The Due Process Clause of the Fourteenth Amendment sets the outer boundaries of a state tribunal's authority to proceed against a defendant." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011). In *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310 (1945), the Supreme Court held that a state may authorize its courts to exercise personal jurisdiction over a nonresident defendant if that defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316 (citation omitted). "Following *International Shoe*, 'the relationship among the defendant, the forum, and the litigation ... became the central concern of the inquiry into personal jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). Accordingly, courts recognize two types of personal jurisdiction: general

jurisdiction and specific jurisdiction. *Bristol–Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017).

### A. General Jurisdiction

General jurisdiction refers to a court's power to "hear any and all claims" against a defendant. *Goodyear*, 564 U.S. at 919. General jurisdiction exists over a corporation where its "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *Id.* (internal quotation marks and citation omitted); *Daimler*, 571 U.S. at 138. In *Daimler*, the Supreme Court explained that a corporation is "at home" in its place of "incorporation and principal place of business," and thus, those locations serve as the paradigm bases for general jurisdiction. 571 U.S. at 137. As a result, "it is 'incredibly difficult to establish general jurisdiction [over a corporation] in a forum other than the place of incorporation or principal place of business.'" *Malik*, 710 F. App'x. at 564 (citation omitted). With respect to an individual, he or she is only subject to general jurisdiction in his or her home state – the individual's domicile. *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 684 (D.N.J. 2015) ("[A]n 'individual's domicile,' or home, constitutes the paradigmatic 'forum for the exercise of general jurisdiction.'") (quoting *Daimler AG*, 571 U.S. at 137).

I find that general jurisdiction does not exist over Defendants in New Jersey. With respect to Mr. Scifo, he has asserted, and Plaintiff does not dispute, that he is a resident of Pennsylvania. Scifo Decl. ¶ 2. Thus, he is only subject to general personal jurisdiction in Pennsylvania. *Chanel*, 133 F. Supp. at 684. Similarly, Advanced Strategy is neither incorporated in nor maintains a principal place of business in New Jersey. As a New York corporation with its principal place of business in New York, Advanced Strategy is only subject to general jurisdiction in that state. Scifo Decl. ¶ 2; *see Daimler AG*, 571 U.S. at 137 (holding that, for a corporation, the "paradig[m] ...

6

bases for general jurisdiction" are its place of incorporation and principal place of business). Plaintiff has not established that this is the type of exceptional case that may warrant the exercise of general jurisdiction outside of Defendants' respective home states. *Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016) ("[I]t is incredibly difficult to establish general jurisdiction over a corporation in a forum other than the place of incorporation or principal place of business.")

### B. Specific Jurisdiction

In the absence of general jurisdiction, a plaintiff may rely on specific jurisdiction where the cause of action is related to, or arises out of, the defendant's contacts with the forum. *IMO Indus., Inc.*, 155 F.3d at 259. In that connection, establishing specific jurisdiction under the Due Process Clause requires satisfaction of a three-part test. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). First, the defendant must have "purposefully directed [its] activities" at the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotation marks omitted). Second, the litigation must "arise out of or relate to" at least one of those activities. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984). And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *O'Connor*, 496 F.3d at 316 (quoting *Int'l Shoe*, 326 U.S. at 320).

Here, Plaintiff argues that Defendants have minimum contacts with New Jersey on two bases. First, Plaintiff asserts that Mr. Scifo maintains a business, Scifo Legacy Planning LLC, which is not a defendant in this action, that has significant New Jersey connections. Pl. Br. 3-4. According to Plaintiff, Scifo Legacy Planning's website indicates that it has an office in Bayonne, New Jersey. Pl. Br. at 3; *see also* Napolitano Decl. ¶¶3-4. Moreover, Plaintiff contends that on Scifo Legacy's client testimonial page, there is a testimonial from Susan Ferraro, Esq. of Bayonne

7

New Jersey. *Id*. Plaintiff also claims that Advanced Strategy "engaged Ms. Ferraro, in her professional capacity in connection with defendants' activities involving Mr. Martin Purvin" and that the retention of a New Jersey attorney further supports Defendants' connections to New Jersey. Pl. Br. at 4. Second, Plaintiff argues that telephone conversations between Mr. Napolitano and Mr. Scifo, as well as the emails giving rise to the the transactions at issue took place while Plaintiff was situated in New Jersey. Pl. Br. at 7-8.

In response, Defendants contend that they do not have minimum contacts with New Jersey and emphasize that Mr. Scifo did not travel to New Jersey for any of the transactions related to the agreements at issue, and that he has never solicited any clients in New Jersey. Def. Br. at 3. In his declaration in support of this motion, Mr. Scifo explains that the life insurance policy Plaintiff purchased was originally "issued in New York; and the agreement wherein a 50% ownership interest was assigned to [REST] was also created and completed in New York," and that the insurance premiums were paid in New York. Scifo Decl. at ¶5. Mr. Scifo further asserts that Scifo Legacy does not have a New Jersey office, and to the contrary, Mr. Napolitano, represented to Mr. Scifo that he had offices in New York and also has a New York phone number. *Id*. Defendants also assert that they purportedly intend to implead "Martin Purvin, the insured of the subject [p]olicy, because he allegedly breached his obligations . . . contribut[ing] to the [p]olicy's lapse," however, under the terms of the agreement between Advanced Strategy and Mr. Purvin, Advanced Strategy can only pursue claims against Mr. Purvin in New York state or federal court. Def. Br. at 3; *see also* Scifo Decl. at ¶8 (explaining that Mr. Purfin "refused to undergo an examination that would have permitted the renewal of the policy in question. However, he has no obligation to litigate this matter in New Jersey because that agreement expressly requires the parties to litigate in New York."). Thus, in Defendants' view, transferring this matter to the United States District

8

Court for the Eastern District of New York would promote judicial efficiency and minimize the cost of litigation.  *Id.*; *see also* ECF No. 11, Def. Reply Br. at 1-6.

As explained, *supra*, the first factor of the specific jurisdiction test requires a showing that the defendant "'purposefully directed [its] activities' at the forum."  *O'Connor*, 496 F.3d at 317 (quoting *Burger King*, 471 U.S. at 472).  One way to do so, is by demonstrating that the defendant incurred contractual obligations with an out-of-state entity or person, and created "continuing relationships and obligations with citizens of another state." *Burger King,* 471 U.S.at 473.  However, the act of entering into a contract with a person or entity in a "foreign jurisdiction, without more, cannot serve as a basis for asserting personal jurisdiction over a nonresident defendant."  *Machulsky v. Hall*, 210 F. Supp. 2d 531, 539 (D.N.J. 2002); *see also G&C Fab-Con, LLC, v. M&S Civil Consultants, Inc.*, No. 20-08425, 2021 WL 268177, at *5 (D.N.J. Jan. 27, 2021) ("The fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident." (internal quotation marks and citations omitted)).  Instead, "prior negotiations and contemplated future consequences, along with the terms of the contract and parties' actual course of dealing . . . must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum."  *Burger King*, 471 U.S. at 479; *see also Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001).

Both of Plaintiff's arguments in favor of personal jurisdiction are unavailing because there is no evidence that Defendants deliberately targeted any of their activities at New Jersey or purposefully availed themselves of the forum.  As an initial matter, Plaintiff has not provided any legal support for its assertion that it would be appropriate to consider the contacts of a non-party entity, such as Scifo Legacy Planning, in order to conclude that Defendants have minimum

9

contacts with New Jersey. Mr. Napolitano asserts that he was aware that Mr. Scifo ran another business; however, he has not alleged that REST was a client of Scifo Legacy Planning or that the entity had any involvement in the particular transactions at issue. Thus, it is unclear how Scifo Legacy's contacts with New Jersey have any bearing on the instant matter, particularly since this case does not arise out of those contacts with New Jersey. *See Helicopteros Nacionales de Colombia*, 466 U.S. at 414 (finding that for a forum state to exercise specific jurisdiction over a defendant, the case must "arise out of or relate" to the defendant's contacts with the forum).

      I note that in some instances, personal jurisdiction over related entities can be imputed using an alter-ego theory, "if a subsidiary is 'merely the agent' of its parent corporation or the parent corporation 'controls' the subsidiary." *Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 470 (E.D. Pa. 2019) (quoting *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018)); *see also Linus Holding Corp. v. Mark Line Indus., LLC*, 376 F. Supp. 3d 417, 425 (D.N.J. 2019). However, Scifo Legacy and Advanced Strategy are not parent and subsidiary corporations; they are simply two entities which share an officer or a director, in this case Mr. Scifo. More importantly, Plaintiff has not attempted to assert an alter ego theory of personal jurisdiction or alleged any of the factors necessary for this Court to make such a finding. *See Linus Holding Corp.*, 376 F. Supp. 3d at 425 (explaining that courts in this circuit look to six factors to guide the alter ego inquiry "[1] gross undercapitalization ...; [2] the failure to observe corporate formalities, non-payment of dividends, [3] the insolvency of the debtor corporation at the time, [4] siphoning of funds of the corporation by the dominant stockholder, [5] non-functioning of other officers or directors, absence of corporate records, and [6] the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders."(alteration in original)).

10

The remainder of Plaintiff's assertions are also insufficient to establish minimum contacts. Aside from Scifo Legacy Planning's contacts with New Jersey, Plaintiff largely relies on the email and telephone communications between Mr. Napolitano and Mr. Scifo, which purportedly took place while Mr. Napolitano was in New Jersey. While "[c]ommunications between parties over mail, telephone, and e-mail . . . factor into a court's minimum contacts analysis," as a general rule, "'[i]nformational communications in furtherance of [a contract between a resident and a nonresident] do[ ] not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [the nonresident defendant].'" *Parkway-Kew Corp. v. Harris Mach. Tools, Inc.*, No. 20-6044, 2020 WL 6375790, at *4 (D.N.J. Oct. 30, 2020) (quoting V*etrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 152 (3d Cir. 1996)); *see also Baanyan Software Servs., Inc. v. Kuncha*, 81 A.3d 672, 679 (N.J. App. Div. 2013) ("we have held that telephonic and electronic communications with individuals and entities located in New Jersey alone, are insufficient minimum contacts to establish personal jurisdiction over a defendant."). Rather, "[i]n determining [specific] jurisdiction over a breach of contract claim," the Court "must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Remick*, 238 F.3d at 256.

Plaintiff relies heavily upon on *Lebel v. Everglades Marina, Inc*., 558 A.2d 1252 (N.J. 1989) and *Blakey v. Cont'l Airlines*, 751 A.2d 538 (N.J. 2000), arguing that Defendants' communications with Plaintiff demonstrate that they purposefully availed themselves of the privilege of doing business in the state of New Jersey. Pl. Br. at 8-10. Plaintiff's reliance on both cases is misplaced, because in both instances, the defendants contacts with the forum were far more extensive than the contacts in the present case. In *Lebel*, the plaintiff, a New Jersey resident, brought a breach of contract claim against a Florida boat-seller. 588 A.2d at 1253. Prior to

11

executing the contract, the plaintiff met the defendant's representative at a New York boat show, and thereafter, the defendant's representative called the plaintiff in New Jersey on at least twenty occasions over the next two years, soliciting the sale and negotiating the terms. *Id*. The sales agreement was sent to the plaintiff in New Jersey, where he signed it. *Id*. Subsequently, the plaintiff filed suit alleging that the defendant defrauded him in connection with the sale. *Id.* a 1253-54. The Court concluded that there was specific jurisdiction over the defendant in New Jersey, because "this defendant allegedly telephoned the buyer in New Jersey to iron out the details of the contract, mailed the contract to the buyer in New Jersey for signing in New Jersey, and received payment from the plaintiff, who defendant knew was a New Jersey resident." *Id.* at 1254. The Court further noted that "the mere transmittal of messages by mail or telephone within the state is not the critical factor, it is the nature of the contact," and in that case, "the defendant knew that plaintiff was a New Jersey resident, sent the plaintiff a contract to sign in New Jersey, and was aware that the boat would be shipped to New Jersey." *Id.* at 1256. The Court explained that under those circumstances, the out-of-state party "should have been aware of the possibility of litigation arising in [New Jersey]." *Id*. at 1257.

Similarly, in *Blakely*, the New Jersey Supreme Court held that the defendants, who had posted defamatory and harassing messages about the plaintiff, a New Jersey resident, on an internet message board "with knowledge that the messages would be published in New Jersey: could be subject to personal jurisdiction in New Jersey." 751 A.2d at 543. The Court explained that the defamatory statements were allegedly made "with the expectation or intent that the publications would affect the pursuit of [the plaintiff's pending lawsuit] in New Jersey." *Id*. at 555. Reasoning that the "quality" and "nature of the contact" was more important than the means of communication, the court concluded that "if defendants' statements [were] capable of a

12

defamatory meaning and were published with knowledge or purpose of causing harm to plaintiff in the pursuit of her civil rights within New Jersey, those intentional contacts within the forum would satisfy the minimum contacts requirement of *International Shoe*." *Id*. at 556.

In contrast, here, Defendants' phone calls and emails, when considered in the context of the entire contractual relationship, are insufficient to establish personal jurisdiction over them in New Jersey. As alleged, there is no indication that Defendants specifically targeted New Jersey. Unlike in *Lebel*, it does not appear that Defendants solicited Plaintiff; rather, the parties were introduced through a mutual friend. Further, Mr. Scifo never had physical presence in New Jersey, and neither the parties' course of dealings nor the terms of the contract suggest that Defendants contemplated the possibility of future litigation in New Jersey. According to Mr. Scifo, he and Mr. Napolitano met in person on three occasions: two of those meetings occurred in Greenwich, Connecticut, while the third took place in Advanced Strategy's office in Mineola, New York. ECF No. 12, Scifo Reply Decl.¶ 5. Although the mail and telephone communications between the parties allegedly occurred while Mr. Napolitano was located in New Jersey, many of the emails proffered by Mr. Napolitano have a DREAM signature block at the bottom, which provides a New York address. *See* Napolitano Decl., Ex. A. Further, the terms of the contract between Defendants and DREAM did not create continuing obligations related to New Jersey. Defendants' only obligation under the terms of the contract were to receive and remit DREAM's portion of the annual premium to Allstate – a New York entity. Unlike other instances where courts have found personal jurisdiction over an out-of-state defendant based on a contract, here, the contract did not require Defendants to undertake any specific action in New Jersey, ship products into New Jersey, or otherwise have any connection to this state. *C.f. J & H Int'l v. Karaca Zucciye Tic. San A.S.,* No. 10-03975, 2012 WL 4742176, at *8 (D.N.J. Oct. 3, 2012) (finding personal jurisdiction over

out-of-state defendant in New Jersey because the defendant contracted with a New Jersey entity and "the contemplated future consequence of the contract was arguably an ongoing relationship given that the contract produced multiple shipments and communications between the parties"); *see also G&C Fab-Con, LLC,* No. 20-08425, 2021 WL 268177, at *5 (D.N.J. Jan. 27, 2021) (finding that New Jersey could not exercise personal jurisdiction over out of state defendant who entered into a contract with New Jersey plaintiff because the "[d]efendant did not solicit the subcontract, never visited New Jersey, performed all of the work under the subcontract in Colorado, which was governed by Colorado law"). In sum, the email communications and phone calls between the parties between do not support a finding that Defendants "purposefully directed [their] activities" at New Jersey, *Burger King*, 471 U.S. at 472, or that Defendants "purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum." *O'Connor*, 496 F.3d at 317 (internal quotations omitted). Accordingly, Plaintiff has not demonstrated that this Court can exercise personal jurisdiction over Defendants.

After finding a lack of personal jurisdiction, the Court could dismiss under Fed. R. Civ. P. 12(b)(2); however, the Third Circuit has stated that "a district court that lacks personal jurisdiction must at least consider a transfer." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020). Under 28 U.S.C. § 1631, the Court "shall, if it is in the interest of justice, transfer such action ... to any other such court ... in which the action ... could have been brought." As discussed above, Advanced Strategy is subject to general personal jurisdiction in New York, where it has its principal place of business and its state of incorporation. Although Mr. Scifo, as a resident of Pennsylvania, is not subject to general jurisdiction in New York, he is arguably subject to specific personal jurisdiction there because the events giving rise to this litigation largely

occurred in New York.[6]  Accordingly, this action could have been brought in the Eastern District of New York, the federal district court which encompasses Mineola.  *See* 28 U.S.C. § 1391(b)(2-3)(explaining that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or . . . if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action").  Accordingly, I find that a transfer to the United States District Court for the Eastern District of New York is appropriate.

### III.     CONCLUSION

For the reasons set forth above, this Court lacks personal jurisdiction over Defendants, and in lieu of dismissal, this matter is transferred to the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1631.


Dated: February10, 2021                                             s/ Freda L. Wolfson

                                                                    Freda L. Wolfson
                                                                    U.S. Chief District Judge

---

[6]     Moreover, personal jurisdiction is waivable, and based on Defendants' motion, in the alternative, to transfer this action, and their representations regarding their intention of impleading Mr. Purvin, it is apparent that Mr. Scifo consents to the exercise of personal jurisdiction over him in New York.